# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ALASKA

**Filed On 12/28/07**

| | |
|---|---|
| In re: <br><br> THOMAS TUCK ZARUBA, <br><br> Debtor. | Case No. 07-00100-DMD <br> Chapter 11 |
| In re: <br><br> KOMA EQUIPMENT LEASING COMPANY, LLC, <br><br> Debtor. | Case No. 07-00101-DMD <br> Chapter 11 |
| In re: <br><br> KOMA SALES COMPANY, LLC, <br><br> Debtor. | Case No. 07-00103-DMD <br> Chapter 11 |

**MEMORANDUM ON HTC'S MOTION FOR DISMISSAL OR CONVERSION**

Huna Totem Corporation's motion for conversion or dismissal duly came before the court for hearing on December 19, 2007. This court has jurisdiction over the motion pursuant to 28 U.S.C. § 1334(b) and the district court's order of reference. It is a core proceeding under 28 U.S.C. § 157(b)(2)(L). For the reasons stated in this memorandum, the motion will be denied and the debtors will be given an opportunity to seek confirmation of their plans.

Background

Huna Totem Corporation (HTC) is an Alaska native corporation formed under ANCSA. It is based in Hoonah, Alaska, on Chichagof Island east of Juneau. In 1999, debtor Tom Zaruba met with representatives of HTC to discuss development of a cruise ship port in Hoonah. HTC agreed to lease real estate to a newly formed limited liability company known as Point Sophia Development Company (PSDC). Zaruba, through his limited liability corporation, Koma Sales Company, became a 51% member in PSDC with HTC owning the remaining 49%. Koma Equipment Leasing, another Zaruba entity, leased five fishing boats and five tour buses to PSDC for use with the anticipated shore excursions. This lease remains in effect through the 2008 tourist season. HTC invested $19 million to improve the port in Hoonah for use by cruise ships. HTC also advanced operating capital in excess of $5.6 million to PSDC. The first cruise ship stopped at PSDC in 2004. Other ships have followed but, unfortunately, revenues from the project were considerably less than Zaruba had projected.

HTC lost confidence in Zaruba and his ability to run PSDC. In September, 2004, HTC agreed to purchase 30% of Zaruba's interest in PSDC for $1.2 million. HTC thereafter reviewed the books of PSDC and didn't like what it saw. It accused Zaruba of overcharging PSDC for certain leased assets. Zaruba denied the accusation. HTC and Zaruba entered into a nine day arbitration in the fall of 2006. The arbitrator found that Zaruba had breached his fiduciary obligations to HTC and misappropriated over $388,000.00. Zaruba filed a motion in state superior court to vacate the arbitrator's award on a variety of grounds. On January 26, 2007, the superior court confirmed the award.

2

Zaruba sought a stay of execution of the superior court's judgment and a waiver of the requirement to post a supersedeas bond. Both motions were denied and Zaruba, along with Koma Equipment Leasing Company and Koma Sales Company, filed for chapter 11 relief promptly thereafter on March 7, 2007. The automatic stay has been terminated with respect to the state court appeal, and the parties have been actively pursuing their appellate rights. Zaruba moved for remand of the appeal to the state superior court. This motion was recently denied and a briefing schedule on the appeal has been set before the Alaska Supreme Court.

    The chapter 11 cases have proceeded in a somewhat disjointed manner. At a July 11, 2007, scheduling conference, this court set September 4, 2007, as the deadline for Zaruba and the Koma entities to file their plans and disclosure statements. HTC filed a motion to convert or dismiss on July 3, 2007, in all three chapter 11 cases. A hearing on HTC's motion was initially set for July 26, 2007. Due to ongoing mediation attempts, which subsequently failed, the July 26 hearing was continued without date, to be reset following the filing of the debtors' plans and disclosure statements. The deadline for the debtors to file these documents was extended to October 1, 2007. The debtors met this deadline. At a scheduling conference held October 1, 2007, the court set hearings on HTC's motion to dismiss or convert, as well as the disclosure statements and plans, for December 5th and 6th in Juneau. These hearings were bumped by the district court for a criminal trial on those dates. The hearings were rescheduled for December 18th and 19th in Juneau, and were again bumped by the district court. A hearing solely on HTC's motion to dismiss or convert was held in Anchorage on December 19th. The hearing on the debtors' disclosure statements and plans is currently scheduled to be held in Juneau on February 5th and 6th, 2008. While

the Juneau courtroom would have been available for an earlier hearing, in January, 2008, HTC's counsel was unavailable for hearing in January.

Analysis

11 U.S.C. § 1112(b)(1) mandates that a court, on request of a party in interest, dismiss or convert a case for cause unless the requested dismissal or conversion is not in the best interests of creditors and the estate. Section 1112(b)(4) now contains a list of sixteen separate, specific grounds which constitute cause for dismissal. HTC does not seek relief under any of those grounds. Instead, HTC argues that the Zaruba and Koma chapter 11 cases were filed in bad faith, as a litigation tactic, promptly after the state court denied the debtors' motions for stays pending appeal and to post a supersedeas bond. HTC also argues that Zaruba has consistently exaggerated the value of his business and personal assets and that the debtors can't propose plans which are "reasonably feasible." Both of these arguments will be addressed.

Bad Faith Filing

Although not specifically listed as cause for relief under § 1112(b)(4), bad faith has long been recognized as an appropriate ground for dismissal or conversion of a chapter 11 case.[1] The most recent Ninth Circuit case on this issue is *In re Marsch*.[2] In that case, the bankruptcy court found that the debtor had filed chapter 11 to prevent the entry of a state court judgment and avoid posting an appeal bond. The lower court also found that the

---

[1] 7 *Collier on Bankruptcy* ¶ 1112.01[2][c] (15th ed. revised 2007).

[2] *Marsch v. Marsch (In re Marsch),* 36 F. 3d 825 (9th Cir. 1994).

4

debtor, who was not in business, had sufficient assets to either pay the anticipated judgment or post an appeal bond. The debtor's case was dismissed as a bad faith filing. The Ninth Circuit affirmed. It noted that the good faith determination was dependent upon "an amalgam of factors and not upon a specific fact."[3] "The test is whether a debtor is attempting to unreasonably deter and harass creditors or attempting to effect a speedy, efficient reorganization on a reasonable basis."[4]

The Ninth Circuit recognized that other courts have permitted a debtor to use chapter 11 to avoid posting an appeal bond if satisfaction of the judgment would severely disrupt the debtor's business.[5] The court found it unnecessary to address this issue in *Marsch*, however, stating:

> Even assuming a Chapter 11 petition may be used for this purpose when enforcement of a judgment would cause severe business disruption, a question we leave open, this would not help the debtor here. The bankruptcy court found that the debtor had the financial means to pay the judgment. Moreover, because she wasn't involved in a business venture, the judgment didn't pose any danger of disrupting business interests . . . . Dismissal of the petition for cause pursuant to section 1112(b) was proper.[6]

Several bankruptcy courts have examined the issue of good faith in cases where a debtor has filed chapter 11 in order to avoid posting a bond on appeal. In an earlier case

---

[3] *Id.* at 828, *citing In re Arnold*, 806 F.2d 937, 939 (9th Cir. 1986).

[4] *Marsch*, 36 F.3d at 828.

[5] *Id.*

[6] *Id.* at 829.

5

arising in Alaska, *Nome Commercial Company*,[7] I examined decisions dealing with this issue and concluded that two distinct lines of cases had developed. A creditor's claim of bad faith filing was typically overruled in cases where the judgment was large and would, if not reversed on appeal, force liquidation of the debtor's business, but in cases where the judgment was smaller and the debtor had the apparent ability to pay it without disrupting his business, motions to dismiss for bad faith were more likely to be granted.[8]  In *Nome Commercial Company*, I denied the creditor's motion to dismiss. The debtors were facing execution on two judgments, one for more than $1.46 million and another for $86,000.00. While the debtors had substantial net worth, the bulk of their wealth was tied to their commercial assets. Under the circumstances, I found that the chapter 11 filings were warranted because they prevented severe disruption of the debtors' businesses.[9]

Two more recent California bankruptcy decisions have denied motions to dismiss for bad faith in cases where the debtors were unable to post bonds pending appeal. In *In re Marshall*,[10] the dispute was between two brothers, the sons of billionaire J. Howard Marshall II, who was the former husband of the late Anna Nicole Smith. Pierce had obtained a $12 million judgment against his brother, Howard, in Texas probate court. Howard filed for chapter 11 relief because he was unable to post an appeal bond. Pierce moved to dismiss on bad faith grounds. The court noted that filing a chapter 11 case because of the crushing

---

[7] *See In re Nome Commercial Co.*, 4 A.B.R. 358 (Bankr. D. Alaska 1996).

[8] *Id.* at 364.

[9] *Nome Commercial Co.*. 4 A.B.R. at 363-364.

[10] 298 B.R. 670 (Bankr. C.D. Cal. 2003).

6

weight of a judgment was not unusual.[11] Nor was it unusual for a debtor to file chapter 11 when faced with an appeal bond that would severely disrupt its business.[12] The court found that Pierce's judgment threatened to dissipate most or all of Howard's assets, and that Howard lacked the ability to post a bond. It also found that Howard had proposed a viable plan which was ready for confirmation. Pierce's motion was denied.

In *In re Melcher*,[13] a debtor lacking sufficient assets to post a $7.4 million appeal bond filed chapter 11. The appeal arose out of a divorce action between the debtor and her late spouse's probate estate. The debtor's only business was the rental of certain residential properties that were part of the marital estate. The court found that the probate estate, if its claim were ultimately allowed by the California appellate court, would be fully protected and paid under the debtor's proposed plan. It concluded that the chapter 11 plan had been filed in good faith.

As noted above, a good faith determination depends upon "an amalgam of factors" and "[t]he test is whether a debtor is attempting to unreasonably deter and harass creditors or attempting to effect a speedy, efficient reorganization on a reasonable basis."[14] The factors present in the Zaruba and Koma cases weigh in favor of the debtors. First, unlike the debtor in *Marsch,* Zaruba is engaged in business.[15] Also unlike the debtor in *Marsch*,

---

[11] *Id.* at 683, *citing In re Texaco, Inc.*, 254 B.R. 536, 541 (Bankr. S.D.N.Y. 2000).

[12] *Marshall*, 298 B.R. at 683.

[13] 329 B.R. 865 (Bankr. N.D. Cal. 2005).

[14] *Marsch*, 36 F.3d at 828.

[15] The leasing of ships and buses is a business in the same way that a debtor's rental of residential properties was in *Melcher*.

7

Zaruba cannot satisfy HTC's judgment from non-business assets. In this regard, Zaruba is more like the debtors in *Nome Commercial Company, Marshall* and *Melcher*. His non-business assets are insufficient to satisfy HTC's judgment, which totals about $440,000.00 as of this date. According to Zaruba, he currently has equity of $386,422.00 in his personal assets. HTC maintains Zaruba's valuations are substantially overstated. It would slash his values by deleting Zaruba's contingent remainderman's interest in his mother's house ($87,585.00) and cutting his and his wife's equity in the vessel *Eagle One* from nearly $200,000.00 to about $60,000.00. Using HTC's values, Zaruba would have to liquidate Koma Equipment's business assets, which include the bus and the charter boat fleets, to pay HTC's judgment in full, with interest. While Zaruba may not be a sole proprietor in the conventional sense, he is a businessman. The assets titled in his corporations are business assets which are necessary for his business operations. Because Zaruba lacks the ability to post an appeal bond without significant business impairment, the chapter 11 filings were not in bad faith.

Further, there is nothing to indicate that the debtors here filed in an attempt to delay the appeal or harass creditors. Relief from stay has been obtained so that the appeal can proceed. Chapter 11 disclosure statements and plans were timely filed. The debtors are contributing significant assets, including exempt property, to their reorganization effort. Their plans contemplate a "worst case" scenario which assumes HTC's award is upheld, and treat HTC's claim accordingly. And, but for the fact that the district court twice bumped the scheduled December hearings on the disclosure statements and plans, this court would now be considering confirmation as well as dismissal issues in this memorandum. Based on this

8

amalgam of factors, I conclude the Zaruba and Koma chapter 11 cases were filed in good faith.

Reasonably Feasible Plan

HTC argues that Zaruba has grossly overstated the value of assets and that he can't propose a "reasonable, feasible" plan within a reasonable period. For the reasons stated above, I find that the debtors are proposing plans within a reasonable period. As to whether the plans are reasonable and feasible, I submit that these issues are more appropriately determined in the confirmation context. These are the feasibility issues which must be examined under § 1129(a)(11).[16] On the other hand, dismissal for "cause" is mandated if a moving party establishes that there has been a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."[17] This standard, "the absence of a reasonable likelihood of rehabilitation," requires a lesser showing than the feasibility showing required for confirmation.[18] Moreover, cause under § 1112(b)(4)(A) contains two elements: loss to the estate and an absence of a reasonable likelihood of rehabilitation. HTC has not met its burden of proof in establishing cause under this provision.

---

[16] Under § 1129(a)(11) the court cannot confirm a plan if such confirmation is "likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."

[17] 11 U.S.C. § 1112(b)(4)(A).

[18] Even when evaluating feasibility, "[t]he Code does not require the debtor to prove that success is inevitable, and a relatively low threshold of proof will satisfy § 1129(a)(11), so long as adequate evidence supports a finding of feasibility." *Computer Task Group, Inc. v. Brotby (In re Brotby)*, 303 B.R. 177, 191 (B.A.P. 9th Cir. 2003) (citations omitted).

HTC argues that it is impossible for Zaruba to propose and confirm a feasible plan on a variety of grounds.  HTC argues that the values Zaruba has placed on his personal and business assets are unrealistically high.  It has produced surveys and valuation reports which contradict Zaruba's values. With regard to the *Eagle One*, a marine surveyor retained by Zaruba, Greenwaters, put a value of $435,000.00 on the boat. A marine survey dated November 16, 2007, prepared for HTC by Sepel & Son Marine Surveying, Inc., places a value of  $400,000.00 on the boat.  These two values are relatively close.  However, in HTC's supplement to its motion to dismiss, it neglects to mention the Sepel & Son survey, instead relying on a liquidation value of $300,000.00 for the vessel given by auctioneer James G. Murphy Inc.

There are substantial differences in the survey valuations given to Koma Equipment's charter boat fleet as well.  Zaruba's surveyor, Greenwater, places a value of $330,500.00 on the entire fleet.  HTC's surveyor, Sepel & Son, values the entire fleet at $217,000.00.  Sepel finds all boats to be well designed, well built, and satisfactory for their intended purpose.  Two boats, which Sepel found to be in below average condition, were given values of $35,000.00 and $38,000.00.  Two boats were stated to be in average condition and given values of $45,000.00 and $48,000.00.  One boat was considered to be in above average condition and Sepel gave this one a value of $50,000.00.  HTC's auctioneer, Murphy, put a liquidation value of $35,000.00 on each of these boats regardless of their condition.

HTC also took issue with Zaruba's valuation of a boat house that he owns free and clear.  Zaruba contended the boat house was worth $35,000.00.  He now has an offer to purchase it for $33,000.00 cash, and a motion to approve that sale is pending.  The parties

also disagree on the values to Koma Equipment's bus fleet as well as the value of Zaruba's interest in his mother's home. Zaruba has indicated that he plans to place more assets in the liquidating trust through an amended plan. No doubt there will be disputes as to the value of such assets also. But the discrepancies in the surveys and reports which have already been provided make it clear to me that it would be premature to make any conclusions regarding the value of the debtors' assets at this time. Rather, a full hearing is required, with expert testimony and the opportunity for cross-examination. In my view, granting dismissal based on highly contested, and possibly deflated, appraisal values is inappropriate and not warranted at this stage of the proceedings.

      HTC contends that the debtors' cash position has deteriorated during these chapter 11 proceedings. HTC further argues that Zaruba's income projections are based on faulty assumptions which show losses and negative cash positions in the future. HTC also maintains that even modest adjustments to the debtors' cash positions will create negative income in the future. I have two problems with these arguments. First, as noted above, they are better addressed as objections to confirmation on the basis of feasibility, rather than as grounds for dismissal. Second, the objections may become moot or irrelevant because the debtors have indicated that they will be filing amended disclosure statements and plans in the near future. The debtors are not locked into the cash flows set forth in their initial disclosure statements and plans; they may amend them at any time prior to confirmation. HTC is trying to hit a moving target. Regardless of HTC's problems with the cash flows, the debtors appear to have substantial assets with which to fund a plan – whether that plan is one for reorganization or liquidation. It would be premature to end the debtors' quest for confirmation at this stage of the proceedings based on problems with the initial cash flows.

HTC has not shown that there has been substantial loss to or diminution of the estate at this point. While the debtors' attorney's fees are sizeable, Zaruba is proposing to pay the majority of those fees with his IRA, an exempt asset not subject to levy by HTC in any event. There is no allegation that the debtors' assets are deteriorating beyond normal wear and tear, or that they lack proper care or any required insurance. And HTC's complaints regarding gross overvaluation of assets and faulty cash projections by the debtors are more appropriately considered in the confirmation context. I cannot conclude, based on the record before me today, and particularly in light of the varying asset valuations provided by the parties, that there is an absence of a reasonable likelihood of rehabilitation in this case.

Conclusion

I conclude that HTC has not established cause for dismissal or conversion, as required under 11 U.S.C. § 1112(b)(1). Zaruba and his related entities did not file for chapter 11 relief in bad faith. Nor can I find that there is an absence of a reasonable likelihood of rehabilitation in this case, at this point in time. And while the debtors' current plans may require further modifications to meet the confirmation standards required by the Code, their plans and disclosure statements were filed within the window of time allotted under § 1121(e) for the filing of a plan and disclosure statement.[19] Assuming the debtors file amended plans and disclosure statements by December 31, 2007, the confirmation hearing which is now scheduled for February 5th and 6th, 2008, will be within the 45 day deadline

---

[19] These chapter 11 cases were filed on March 7, 2007. Section 1121(e) requires that a plan and disclosure statement in a small business case must be filed no later than 300 days after the order for relief. In this case, the 300 day deadline will fall on January 1, 2008. The debtors have indicated that they intend to file amended plans and disclosure statements by December 31, 2007.

12

specified in § 1129(e).[20] HTC's motion to dismiss or convert will be denied. These cases will proceed to confirmation on February 5th and 6th, 2008. An order will be entered consistent with this memorandum.

DATED: December 28, 2007

BY THE COURT

/s/ Donald MacDonald IV
DONALD MacDONALD IV
United States Bankruptcy Judge

Serve: C. Christianson, Esq.
D. Bruce, Esq.
W. Dawson, Esq.
M. Northrup, Esq.
D. Schiffrin, Esq.
K. Hill, Esq.
U. S. Trustee

12/28/07

---

[20] Further, in my view, the fact that the confirmation hearing was twice bumped by the district court in December constitutes an unusual circumstance which would excuse any claim of delay on the part of HTC.

13